UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
ROHAN KAPOOR,

    Plaintiff,

      -against-

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.*,

    Defendants.
-------------------------------X

<u>MEMORANDUM & ORDER</u>
22-cv-7135(JS)

APPEARANCES

For Plaintiff:          Rohan Kapoor
                     529 Nolting Avenue
                     North Babylon, NY 11703
                     *Pro Se*

For Defendants:        David Allen Cooper, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     271-A Cadman Plaza East, 7th Floor
                     Brooklyn, NY 11201

                     Nairi Simonian Gruzenski, Esq.
                     DOJ-USAO
                     Eastern District of New York
                     271-A Cadman Plaza East
                     Brooklyn, NY 11201

SEYBERT, District Judge:

        Plaintiff Rohan Kapoor ("Plaintiff" or "Mr. Kapoor") commenced this action against the United States Citizenship and Immigration Services ("USCIS") and Ur M. Jaddou, in her official capacity as the Director of USCIS ("Ms. Jaddou") (collectively, "Defendants" or "the Government"), on November 22, 2022, seeking

review of USCIS's decision to deny Mr. Kapoor an "extraordinary ability" visa.  (See generally, Compl., ECF No. 1.)  Mr. Kapoor filed a first amended complaint ("AC") on September 14, 2023.  (See generally, AC, ECF No. 21.)  Mr. Kapoor filed a second amended complaint ("SAC") on February 23, 2024.  (See generally, SAC, ECF No. 35.)  The Government filed a motion to dismiss for failure to state a claim, or in the alternative, a motion for summary judgment ("Gov'ts Motion" or "MSJ"), on July 8, 2024.  (See generally, MSJ, ECF No. 40.)  For the reasons stated herein, the Government's Motion is GRANTED.

BACKGROUND

I.    Statutory and Regulatory Background

Congress created five "preference" categories for employment-based visas in the Immigration Act of 1990, Pub. L. No. 101-649 (1990).  See 8 U.S.C. § 1153(b).  "First preference" visas carry multiple advantages.  See Jafarov v. U.S. Citizenship & Immigr. Servs., No. 23 CIV. 3372, 2024 WL 69056, at *1 (S.D.N.Y. Jan. 5, 2024).  First, if a noncitizen[1] qualifies for a "first preference" visa, that person need not have an offer of employment in the United States.  8 C.F.R. § 204.5(h)(5) ("Neither an offer for employment in the United

---

[1] This decision uses the term "noncitizen" as the equivalent to the statutory term "alien" that is used within the meaning of the Immigration and Nationality Act.  This follows the Supreme Court's lead.  See, e.g., Nasrallah v. Barr, 590 U.S. 573, 578 n.2 (2020).

States nor a labor certification [from the Department of Labor] is required for this classification."). Second, recipients of "first preference" visas do not have to go through the "time-consuming labor certification process" that other visa applicants must go through. Jafarov, 2024 WL 69056, at *1 (quoting Kazarian v. U.S. Citizenship & Immigr. Servs., 596 F.3d 1115, 1120 (9th Cir. 2010)). Finally, there is not a long backlog for these visas, so first preference visa recipients are able to "avoid the years-long waiting periods that apply to most other employment-based immigration categories." Id. (quoting Amin v. Mayorkas, 24 F.4th 383, 387 (5th Cir. 2022)).

One of the types of "first preference" visas is for noncitizens of "extraordinary ability," "colloquially dubbed as the 'Einsten' or 'genius' visa." Id. (quoting Amin, 24 F.4th at 386-87). Noncitizens seeking to obtain this type of visa bear the burden of demonstrating the following three criteria:

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,
>
> (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and
>
> (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A)(i)-(iii). "Extraordinary ability" requires "a level of expertise indicating that the individual is

one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2).

USCIS reviews applications for the "extraordinary ability" visas through a two-step process. See Jafarov, 2024 WL 69056, at *1 (first citing U.S. CITIZENSHIP & IMMIGR. SERVS., POLICY MANUAL vol. 6, pt. F, ch. 2 (2023) [hereinafter, "POLICY MANUAL"]; then citing Amin, 24 F.4th at 388–89).

The first step of USCIS's adjudication process (the "First Step") requires the applicant to provide "initial evidence" of either: (1) a major "one-time achievement," such as a Nobel Prize, or (2) at least three of the following criteria:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
>
> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
>
> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
>
> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
>
> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

4

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3)(i)-(x).  If USCIS finds the petitioner proved by a preponderance of the evidence that he or she satisfies the above First Step criteria, then USCIS "moves on to step two, a totality of the circumstances inquiry, to make its final determination of a petition's merits."  Cuckic v. Jaddou, No. 21-CV-8395, 2023 WL 2586031, at *2 (S.D.N.Y. Mar. 21, 2023) (citing Noroozi v. Napolitano, 905 F. Supp. 2d 535, 539 (S.D.N.Y. 2012)).

The second step of USCIS's adjudication process (the "Second Step") involves USCIS conducting a "final merits determination" to determine whether the noncitizen, by a preponderance of the evidence, has demonstrated that he or she is "'one of that small percentage who have risen to the very top of the field of endeavor' and received 'sustained' national or international acclaim."  See Jafarov, 2024 WL 69056, at *2 (first

quoting POLICY MANUAL, vol. 6, pt. F, ch. 2 at B; then citing 8 C.F.R. § 204.5(h)(2)). This Second Step involves a "qualitative, all-things-considered evaluation of the noncitizen's achievements, focused on whether he meets the 'high level of expertise for the [extraordinary ability] immigrant classification.'" Id. (quoting POLICY MANUAL, vol. 6, pt. F, ch. 2 at B).

Many federal courts have described the above two-step process as "extremely restrictive," Cuckic, 2023 WL 2586031, at *2 (quoting Kazarian, 596 F.3d at 1120), and have noted that these barriers are the reason that this type of visa is referred to as the "Einstein" or "genius" visa. Id. (citation omitted).

## II. Factual Background

Mr. Kapoor is a citizen of India. (See Certified Administrative Record ("CAR"), ECF No. 30-12, at 474.) Mr. Kapoor has lived in the United States since he was four years old. (See SAC ¶ 17.) Before Mr. Kapoor filed the I-140 Petition ("I-140") at issue in this case, he was last admitted into the United States on December 9, 2018, with paroled status. (See CAR at 474.)

Mr. Kapoor filed his I-140 with USCIS on May 24, 2022, seeking status as "an alien of extraordinary ability." (See id. at 473.) At the same time, Mr. Kapoor also filed a Form I-907, a Request for Premium Processing Services ("I-907"). (See id. at 466-72.) Mr. Kapoor works as a consultant in customer relationship

management ("CRM"), his claimed field of expertise.  (See id. at 2.)

On June 6, 2022, USCIS issued a Request for Evidence ("RFE").  (See id. at 2, 457-64.)  USCIS received Mr. Kapoor's response to the RFE on November 1, 2022.  (See id. at 2.)  USCIS denied Mr. Kapoor's I-140 on November 7, 2022, but sua sponte reopened the I-40 on March 8, 2023, withdrawing the November 7, 2022 denial.  (See id. at 173-74.)  When USCIS withdrew its denial, it also issued a Notice of Intent to Deny ("NOID").  (See id. at 170.)  USCIS offered Mr. Kapoor the opportunity to submit additional documentation and information within thirty days (or thirty-three days if Mr. Kapoor received the NOID by mail).  (See id.)  On June 8, 2023, Mr. Kapoor responded to the NOID.  (See id. at 11.)  USCIS issued its final decision (the "Decision") on August 28, 2023, denying Mr. Kapoor's I-140.  (See id. at 1.)  That Decision is the final agency action that gave rise to the present lawsuit before the Court.

USCIS concluded in its Decision that Mr. Kapoor satisfied the First Step by meeting three of the criteria, in particular, they found evidence of: (1) published material about the noncitizen, see 8 C.F.R. § 204.5(h)(3)(iii); (2) the noncitizen's participation as a judge of others in the same field, see id. § 204.5(h)(3)(iv); and (3) the noncitizen's authorship of scholarly articles in the field in professional publications, see

7

id. § 204.5(h)(3)(vi). (See CAR at 3-4.) However, USCIS concluded in its Decision that Mr. Kapoor did not satisfy two other criteria that he also submitted "evidence" for, in particular, evidence that the noncitizen: (1) performed in a critical role for distinguished organizations, see 8 C.F.R. § 204.5(h)(3)(viii); and (2) commanded a high salary in relation to others in the field, see id. § 204.5(h)(3)(ix). (See CAR at 4-8.)

Since Mr. Kapoor satisfied the First Step, USCIS conducted the Second Step analysis. (See id. at 8-9.) In so considering, USCIS denied Mr. Kapoor's I-140 on the Second Step analysis, because:

> While [Plaintiff] has enjoyed a successful career, the record does not include extensive documentation showing his achievements have been recognized in the field of expertise, and that he has reached a level of expertise indicating that he is one of that small percentage who have risen to the top of the field of endeavor. The petitioner seeks a highly restrictive visa classification, intended for individuals already at the top of their respective fields, rather than for those progressing toward the top.

(Id. at 8.) USCIS found that "[a]fter a careful review and analysis of all evidence within the record, USCIS finds that the petitioner has not established eligibility for the benefit sought" because Mr. Kapoor did not meet his burden to "prove by a preponderance of the evidence . . . that [he] is fully qualified for the benefit sought." (Id. at 9.)

III. <u>Procedural Background</u>

Mr. Kapoor filed the instant action on November 22, 2022, at first challenging USCIS's initial denial of the I-140 from November 7, 2022. (<u>See</u> Compl.) Subsequently, on September 14, 2023, Mr. Kapoor filed an amended complaint, alleging USCIS violated the Administrative Procedure Act ("APA") in its Decision. (<u>See</u> AC.) Mr. Kapoor sought a declaratory judgment ordering USCIS to withdraw its denial and ordering his I-140 to be approved. (<u>See</u> <u>id.</u>)

The Government filed its motion to dismiss, or, in the alternative, motion for summary judgment, on January 23, 2024. (<u>See</u> ECF No. 31.) On the same date, the Government also filed the CAR. (<u>See</u> ECF No. 30.) On February 6, 2024, Mr. Kapoor moved for leave to file a second amended complaint. (<u>See</u> ECF No. 33.) On February 14, 2024, the Government opposed Mr. Kapoor's motion. (<u>See</u> ECF No. 34.) On February 20, 2024, the Court granted Mr. Kapoor leave to file his second amended complaint. (<u>See</u> Feb. 20, 2024 Electronic Order.)

Mr. Kapoor filed his second amended complaint on February 23, 2024 ("Complaint"). (<u>See</u> SAC.) On July 8, 2024, the Government filed its Motion (<u>see</u> MSJ), along with Mr. Kapoor's Opposition (<u>see generally</u>, Opp'n, ECF No. 41), and the Government's Reply brief (<u>see generally</u>, Reply, ECF No. 42). Mr. Kapoor filed

a motion for oral argument on the Government's Motion on July 12, 2024.[2]  (See ECF No. 43.)

## IV.  Legal Standards

### A. Summary Judgment

As a general matter, to prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  To make its determination, the Court must view all facts "in the light most favorable" to the non-moving party.  Noroozi, 905 F. Supp. 2d at 540 (citation omitted).  To defeat a summary judgment motion, the non-moving party must establish a genuine issue of fact by "citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A).

Where a party seeks review of agency action under the APA and "the entire case on review is a question of law," summary judgment is appropriate.[3]  Noroozi, 905 F. Supp. 2d at 541 (citation omitted); see also Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  Indeed, "[w]here, as here, a party seeks

---

[2] The Court is ruling on the papers, and thus, denies Plaintiff's motion for oral argument, found at ECF No. 43, as MOOT.

[3] Accordingly, because Plaintiff seeks review of an agency action pursuant to the APA, the Court reviews the Government's Motion (see ECF No. 40) as a Motion for Summary Judgment, and not a Motion to Dismiss.

judicial review of agency action, summary judgment is appropriate, since 'whether an agency action is supported by the administrative record and consistent with the APA standard of review' is decided 'as a matter of law.'" Cuckic, 2023 WL 2586031, at *4 (quoting Residents of Sane Trash Sols., Inc. v. U.S. Army Corps of Eng'rs, 31 F. Supp. 3d 571, 586 (S.D.N.Y. 2014)).

Moreover, in cases involving review of a final agency action under the APA, "the usual Rule 56 summary judgment standard 'does not apply.'" Jafarov, 2024 WL 69056, at *3 (quoting New York v. U.S. Dep't of Health & Hum. Servs., 414 F. Supp. 3d 475, 516 (S.D.N.Y. 2019)). This is because "'the district judge sits as an appellate tribunal,' and '[t]he entire case on review is a question of law.'" Id. (alteration in original) (first quoting Koopmann v. U.S. Dep't of Transp., 335 F. Supp. 3d 556, 560 (S.D.N.Y. 2018); then quoting Am. Bioscience, Inc., 269 F.3d at 1083). In these instances, the Court's role is not to decide whether there is a genuine dispute of material fact, but is to "decid[e], as a matter of law, whether the agency action is . . . consistent with the APA standard of review." Id. (quoting Fisher v. Pension Guard. Corp., 468 F. Supp. 3d 7, 18 (D.D.C. 2020), aff'd, 994 F.3d 664 (D.C. Cir. 2021)).

Therefore, "[t]he question whether an agency's decision is arbitrary and capricious . . . is a legal issue" amenable to summary disposition. Citizens Against Casino Gambling in Erie

11

Cnty. v. Hogen, No. 07-CV-0451S, 2008 WL 2746566, at *25 (W.D.N.Y. July 8, 2008) (quoting State of Connecticut v. U.S. Dep't of Com., No. 3:04 CV 1271, 2007 WL 2349894, at *1 (D. Conn. Aug. 15, 2007)).

B. Arbitrary and Capricious Review

Federal courts have jurisdiction under the APA to review "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. However, federal courts must be highly deferential when reviewing agency actions and may only disturb an agency action if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). Substantial evidence is only "more than a mere scintilla" of evidence. See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 120 F.3d 341, 346 (2d Cir. 1997) (citation omitted). An agency abuses its discretion when it "fails to present a rational explanation for its decision or if the decision is devoid of any reasoning." Noroozi, 905 F. Supp. 2d at 541 (citing Sinistovic v. Holder, 429 Fed. App'x 37, 39 (2d Cir. 2011) (summary order)). A decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view

or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983)); see also Nat. Res. Def. Council v. EPA, 658 F.3d 200, 215 (2d Cir. 2011).

Thus, it is not permissible for a court to either "engage in an independent evaluation of the cold record," Guan v. Gonzales, 432 F.3d 391, 394 (2d Cir. 2005), or "substitute its judgment for that of the agency." Nat. Res. Def. Council, 658 F.3d at 215. Accordingly, a court must grant summary judgment in favor of the Government unless it determines the agency has not "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action including whether there is a 'rational connection between the facts found and the choice made.'" J. Andrew Lange, Inc. v. FAA, 208 F.3d 389, 391 (2d Cir. 2000) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)); see also Quan Mei Chen v. Dep't of Homeland Sec., 251 Fed. App'x 18, 20 (2d Cir.2007) (courts "will not disturb a factual finding if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole.").

More specifically, adherence to this deferential standard "is especially appropriate in the immigration context." I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 416, 425 (1999). "[J]udicial review of a denial of a visa petition is narrowly circumscribed and limited to whether the decision of the INS was

arbitrary, capricious or an abuse of discretion." <u>Fedin Bros. Co.</u> <u>Ltd. v. Sava</u>, 724 F. Supp. 1103, 1105 (E.D.N.Y. 1989), <u>aff'd</u>, 905 F.2d 41 (2d Cir. 1990).  "Under this standard, reversal would require that th[e] [c]ourt find that no reasonable fact finder could have come to the USCIS's erroneous conclusion." <u>Hristov v.</u> <u>Roark</u>, No. 09-CV-2731, 2011 WL 4711885, *3 (E.D.N.Y. Sept. 30, 2011) (citing <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 478, 481 (1992)).

DISCUSSION

I. <u>USCIS's Final Merits Determination Was Not Arbitrary or</u> <u>Capricious</u>[4]

    A. <u>First Step-Criteria</u>

USCIS concluded in its Decision that Mr. Kapoor did not satisfy two of the five First Step criteria that he submitted "evidence" for: (1) evidence the noncitizen performed in a critical

---

[4] Regarding Mr. Kapoor's claim that USCIS applied a heightened burden of proof when adjudicating his I-140 (Opp'n at 4-5), this Court finds no evidence in the record to indicate such and thus this Court cannot and will not review and reweigh the evidence here <u>de novo</u>.  The Decision itself also refers to the correct standard: "[T]he petitioner must prove by a preponderance of the evidence, in other words, that it is more likely than not, that the petitioner is fully qualified for the benefit sought." (CAR at 9 (citing <u>In re E-M-</u>, 20 I. & N. 77 (Comm'r 1989))).  Additionally, Mr. Kapoor argues that the Government "ignored probative evidence of the Plaintiff's extraordinary ability." (Opp'n at 4.)  However, an agency is not required to "provide written findings about every piece of evidence that it consider[s]." <u>Kakar v. United States</u> <u>Citizenship & Immigr. Servs.</u>, 29 F.4th 129, 132 (2d Cir. 2022) (alteration in original) (quoting <u>Dibble v. Fenimore</u>, 545 F.3d 208, 219 (2d Cir. 2008)).

role for distinguished organizations, see 8 C.F.R. §
204.5(h)(3)(viii); and (2) evidence the noncitizen commanded a
high salary in relation to others in the field, see id. §
204.5(h)(3)(ix). (See CAR at 4-8.) Mr. Kapoor disputes this for
various reasons, including that "USCIS'[s] determination that the
Plaintiff does not meet two of the five criteria is inaccurate,
because the agency failed to properly assess the evidence provided.
Thus, a final merits determination cannot be made. . . ." (See
Opp'n at 6-12.) It is not readily apparent to the Court that
finding in favor of Mr. Kapoor on two more criteria would have
changed the outcome, but the Court nevertheless analyzes for
completeness. This evidence can also eventually be considered in
the Second Step determination: "In reviewing th[e] petition, USCIS
will first consider the evidence in relation to the plain language
of the above criteria. If the individual . . . meets at least
three criteria, USCIS will then consider the evidence in the
context of a final merits determination." (See CAR at 3.)

> i. Evidence the Noncitizen "Performed in a Leading or
> Critical Role for Organizations or Establishments
> that Have a Distinguished Reputation"

The Government argues the Decision correctly concluded
Mr. Kapoor did not satisfy this leading or critical role criterion
(see 8 C.F.R. § 204.5(h)(3)(viii)). First, the Government contends
that a letter and documentary evidence from Ian Finch, the Vice
President of Commerce Bank's CRM team ("Mr. Finch") do not

demonstrate that Mr. Kapoor's role was critical because: (1) the Statement of Work "only lists the terms and agreements for the Commercial Salesforce Implementation and does not list Plaintiff or provide details as to how his role as a contractual Functional Analyst for Commerce Bank was critical" (see ECF No. 40-1, Gov'ts Support Memo, at 21 (citing CAR at 821-46)); and (2) the letter from Mr. Finch did not provide any documentary evidence of Commerce Bank's distinguished reputation (see id. (citing CAR at 150, 291)). The Government also argues that a letter from Carsten Stahlhofen, a project manager at Catalent, does state Mr. Kapoor's role as a "Training Lead" was critical to the specific project, but "it fails to explain how [Mr. Kapoor's] work on this project was of significant importance to the outcome of either Catalent as a whole, or those of a division or department within Catalent." (Id. at 21-22 (citing CAR at 299-300).)

However, Mr. Kapoor contends that the Government "ignore[ed] evidence of nine other leading or critical roles that paints a clear-cut picture of the Plaintiff's extraordinary ability" and it was arbitrary and capricious for the Government to not reference these as part of their decision-making. (Opp'n at 6-8.) The Government responds: (1) Mr. Kapoor asked USCIS to pay special attention to his roles at Catalent and Commerce Bank (see Reply at 9 (citing CAR at 59, 501); see also CAR at 502-06); (2) the letters from the other companies are "largely unsupported,"

(Reply at 9); and (3) Mr. Kapoor stated to USCIS that those letters were relevant to the salary criterion (see id. (citing 928, 930-31)).

The Court finds USCIS's Decision was not arbitrary nor capricious. USCIS presented a rational explanation for its Decision based on the evidence. First, USCIS determined there was no evidence presented regarding whether Commerce Bank is a sufficiently distinguished and/or established company. See Cuckic, 2023 WL 2586031, at *5 (explaining "[o]ne element of criterion (xiii) is that an applicant must show that the places at which they were employed were sufficiently distinguished and/or established" and deciding "USCIS reasonably found that [petitioner] failed to meet her burden of establishing that [one of her employers] had a sufficiently high reputation to meet the criteria"). Indeed, Mr. Kapoor does not dispute USCIS's contention that he did not include information about Commerce Bank's reputation in his opposition brief. (See generally Opp'n at 6-8.)

Second, regarding the letter about Mr. Kapoor's role at Catalent, USCIS determined, upon review of the evidence, that "it fails to explain how [Mr. Kapoor's] work on this project was of significant importance to the outcome of either Catalent as a whole, or those of a division or department within Catalent." (Gov'ts Support Memo at 21-22 (citing CAR at 299-300, 916-17).)

Giving deference to USCIS, as the Court must, USCIS's decision was based on substantial evidence and within reason. See, e.g., Noroozi, 905 F. Supp. 2d at 544-45 ("Having reviewed these letters, and giving due deference to [US]CIS, the Court cannot find [US]CIS's judgment to have been in error, let alone arbitrary, capricious, or an abuse of discretion. These letters, while descriptive . . . simply do not describe, in any detail, how [petitioner] performed in a 'leading or critical role.'"); see, e.g., Yasar v. Dep't of Homeland Sec., No. 05-cv-2448, 2006 WL 778623, at *12 (S.D. Tex. Mar. 24, 2006) ("The record indicates that the petitioner's work as a consultant was highly valued, but the evidence does not establish that the petitioner's role extended beyond the discrete projects on which he worked.").

Finally, with regard to Mr. Kapoor's argument USCIS "only references two examples of critical roles played by the Plaintiff" (see Opp'n at 6-7), as discussed supra, USCIS is not required to "provide written findings about every piece of evidence that it consider[s]." Kakar, 29 F.4th at 132 (alteration in original) (quoting Dibble, 545 F.3d at 219).

ii. Evidence the Noncitizen "Commanded a High Salary or Other Significantly High Remuneration for Services, in Relation to Others in the Field"

The Government also argues the Decision correctly concluded Mr. Kapoor did not satisfy this high salary criterion (see 8 C.F.R. § 204.5(h)(3)(ix)).  The Government contends the

evidence of Mr. Kapoor's salary did not align with statistics to establish his salary in 2021 was high compared to other multi-role CRM consultants.  (See Gov'ts Support Memo at 23-25.)  The overarching issue that led USCIS to find against Mr. Kapoor on this criterion is that the evidence did not establish Mr. Kapoor commands a high salary in relation to other experienced CRM consultants with multiple roles.  (See id.)  Mr. Kapoor argues that it should not matter that his salary was derived from two employers because the "plain language of the criterion demands high salary in relation to others in the field."  (See Opp'n at 8 (emphasis in original).)   Mr. Kapoor also asserts he produced evidence of his salary for two years — 2018 and 2021 — but USCIS ignored evidence of his 2018 salary.  (Id. at 9.)

While reasonable minds can differ as to the importance of Mr. Kapoor's salary and compensation evidence, USCIS's decision is not arbitrary, capricious, or erroneous.   USCIS, upon examination of the evidence, came to the reasonable conclusion that Mr. Kapoor's evidence compared average and median salaries of single-role positions to his multi-role position, which was not enough to establish that he commands a high salary in relation to others in the field.  See, e.g., Arbor Home, LLC v. Mayorkas, 604 F. Supp. 3d 878, 888-89 (N.D. Cal. 2022) (finding USCIS's decision was not arbitrary or capricious since the agency considered and determined that "'the lack of context regarding the significance

of this award limits its probative value.' . . . The agency considered the evidence Plaintiffs submitted [], evaluated that evidence, explained some of the deficiencies it found, and then assigned it some but 'limited' probative value given those deficiencies."), aff'd, No. 22-16081, 2023 WL 4819647 (9th Cir. July 27, 2023); see also Jafarov, 2024 WL 69056, at *9 (finding USCIS's interpretation of the record was not erroneous where it concluded that the "record lacked sufficient 'comparative data' as to [petitioner's] compensation.").

And with respect to Mr. Kapoor's argument USCIS did not consider evidence of his salary from 2018 (see Opp'n at 9-10), as discussed supra, USCIS is not required to "provide written findings about every piece of evidence that it consider[s]." Kakar, 29 F.4th at 132 (alteration in original) (quoting Dibble, 545 F.3d at 219). Nevertheless, the record reflects that USCIS in fact did consider evidence of Mr. Kapoor's salary from 2018. Mr. Kapoor submitted an "Evidence Summary for Mr. Kapoor's Salary in 2018" (see CAR at 308), in which he wrote, in part, "[t]o further solidify Mr. Kapoor's claim of having a salary higher than that of his peers, this petition also provides salary data from PayScale, a credible professional organization." (Id. at 310.) And USCIS acknowledged this PayScale evidence in its Decision: "The petitioner also submitted the above-listed salary surveys from PayScale for various 'average' occupations in an attempt to

20

establish that his salary is high relative to others in the field."
(Id. at 7.)  Accordingly, the Court finds Plaintiff's argument to
be without merit.

### B. Second Step-Determination

If the First-Step Criteria is met, USCIS moves on to the
Second Step final merits determination, in which:

> USCIS determines whether the evidence demonstrates
> both a 'level of expertise indicating that the
> individual is one of that small percentage who have
> risen to the very top of their field of endeavor' and
> 'that the alien has sustained national or
> international acclaim and that his or her achievements
> have been recognized in the field of expertise.'

Bodhankar v. U.S. Citizenship & Immigr. Servs., No. 19-CV-706,
2020 WL 777211, at *3 (N.D.N.Y. Feb. 18, 2020) (quoting Kazarian,
596 F.3d at 1119-20).

USCIS found that Mr. Kapoor did not meet the final merits
determination in the Second Step.  (See CAR at 8-9.)  The
Government argues, "while the evidence he submitted shows he has
a valuable skillset, USCIS correctly concluded that he failed to
show national or international acclaim for his work, or that he
is at the top of his field."  (Gov'ts Support Memo at 25.)
Further, they contend, "USCIS'[s] conclusion was reasonable
because when taken in totality, the evidence submitted to
establish the various criteria did not demonstrate a sustained
record of [Mr. Kapoor] receiving acclaim throughout his nascent
career."  (Id. at 26.)  In response, Mr. Kapoor alleges that USCIS

did not properly address the evidence and ignored entire sections of evidence he included.  (See Opp'n at 11.)[5]

The role of this Court is to review the Decision under the narrow arbitrary and capricious standard — this Court cannot substitute its judgment for that of USCIS. See Bodhankar, 2020 WL 777211, at *5.  While Mr. Kapoor again contends that USCIS ignored evidence, the record and the law do not support such contention. As to the record, USCIS has stated that they "review[ed] [] the record in the aggregate" and determined that it "does not establish that the petitioner has a level of expertise required for the classification sought." (CAR at 8 (emphasis added).)  As to the law, as this Court has explained multiple times in this order, an agency is not required to "provide written findings about every piece of evidence that it consider[s]." Kakar, 29 F.4th at 132 (alteration in original) (quoting Dibble, 545 F.3d at 219); see also Noroozi, 905 F. Supp. 2d at 544 ("That, in its Letter of Denial, [USCIS] did not cite from each and every letter

_____

[5] Mr. Kapoor cites to Buletini v. I.N.S. for the proposition that "[o]nce it is established that the alien's evidence is sufficient to meet three of the criteria listed in 8 C.F.R. § 204.5(h)(3), the alien must be deemed to have extraordinary ability unless the INS sets forth specific and substantiated reasons for its finding that the alien, despite having satisfied the criteria, does not meet the extraordinary ability standard." (Opp'n at 12 (quoting 860 F. Supp. 1222, 1234 (E.D. Mich. 1994)).  The Government replies that the Fifth Circuit expressly rejected Buletini in Amin v. Mayorkas, 24 F.4th 383 (5th Cir. 2022).  (See Reply at 13-14.) The Court declines to opine on any apparent discrepancies in the law amongst courts outside of the Second Circuit.

in support of [the] petition does not make its decision arbitrary or capricious.").  Moreover, under the arbitrary and capricious review standard, and upon review of the record, this Court cannot find that USCIS's Decision was arbitrary, capricious, or erroneous, because it was a reasonable decision.  USCIS even notes that Mr. Kapoor has enjoyed a "successful career," but "the record does not include extensive documentation showing his achievements have been recognized in the field of expertise, and that he has reached a level of expertise indicating that he is one of that small percentage who have risen to the top of the field of endeavor."  (CAR at 8.)

The Court is not desensitized to Mr. Kapoor's situation. Mr. Kapoor has proven to be a talented CRM consultant, and even USCIS has acknowledged as much (see id.).  However, being unable to re-review the record, and only being able to review USCIS's Decision to determine if it was arbitrary or capricious, the Court finds it was not, and therefore must grant the Government's Motion.

## II.  USCIS's Decision to Decline Plaintiff's Request for a Refund was Neither Arbitrary nor Capricious

Mr. Kapoor filed an I-907 along with his I-140 to expedite his processing time-period for his application.  (See CAR at 466-72.)  In the Complaint, Mr. Kapoor alleges he is entitled to a refund of the $2,500 fee he paid for the expedited

adjudication of his I-140 because USCIS took longer than the statutory time frame found in 8 C.F.R. § 106.4 to render a decision, and requests relief based on such allegation. (SAC §§ 41, Prayer for Relief.)

The Government contends that USCIS complied with the requirements of 8 C.F.R. § 106.4 because that statute guarantees that petitioners seeking an "extraordinary ability" visa will receive an "approval notice, denial notice, a notice of intent to deny, or a request for evidence" within fifteen days. See 8 C.F.R. §§ 106.4(e)(11), (f)(1). The Government argues that this is so because: (1) USCIS issued an RFE on June 6, 2022 — thirteen days after Mr. Kapoor filed his I-140, and (2) Mr. Kapoor responded to the RFE on November 1, 2022, and USCIS issued a denial of Mr. Kapoor's I-140 on November 7, 2022 — six days after receiving Mr. Kapoor's response to USCIS's RFE. (See Gov't's Support Memo at 20 (citing CAR at 2, 173-74, 457-64).)

Mr. Kapoor, however, alleges the Government violated 8 C.F.R. § 106.4 when USCIS reopened his petition sua sponte, and sent a NOID on March 8, 2023, to which Mr. Kapoor responded on June 8, 2023, yet USCIS did not issue its final Decision until August 28, 2023, which was longer than the fifteen days required by the statute. (Opp'n at 5 (citing CAR at 1-9, 159-71, 173-80).)

The statute that governs, 8 C.F.R. § 106.4, provides, in part, and as relevant, as follows:

24

(a) General. A person may submit a request to USCIS for premium processing of certain immigration benefit requests, subject to processing timeframes and fees, as described in this section.

* * *

(e) Processing timeframes. The processing timeframes for a request for premium processing are as follows:

* * *

(11) Petition for classification under section 203(b)(1)(A) of the Act: 15 business days.

* * *

(f) Processing requirements and refunds.

(1) USCIS will issue an approval notice, denial notice, a notice of intent to deny, or a request for evidence within the premium processing timeframe.

(2) Premium processing timeframes will commence:

(i) For those benefits described in paragraphs (e)(1) through (16) of this section, on the date the form prescribed by USCIS, together with the required fee(s), are received by USCIS.

* * *

(3) In the event USCIS issues a notice of intent to deny or a request for evidence of the premium processing timeframe will stop and will recommence with a new timeframe as specified in paragraphs (e)(1) through (21) of this section on the date that USCIS receives a response to the notice of intent to deny or the request for evidence.

8 C.F.R. §§ 106.4(a), (e)(11), (f)(1), (f)(2)(i), (f)(3).

Neither Mr. Kapoor nor the Government cite to any relevant case law to support their arguments on this issue. (See

25

Gov't Support Memo at 19-20; see Opp'n at 5-6; see Reply, at 6-7.) This Court is also not aware of any relevant case law on this issue. The facts, however, indicate USCIS's decision was not arbitrary or capricious. Mr. Kapoor does not disagree that USCIS timely adjudicated his initial application. (See Opp'n at 5-6.) Mr. Kapoor's argument that he should receive a refund because USCIS did not adjudicate his I-140 within the fifteen-day timeframe after USCIS sua sponte reopened his I-140 after it had already denied it once before is not supported by the statutory language or any case law. USCIS had no obligation to reopen Mr. Kapoor's I-140, and Mr. Kapoor did not pay another $2,500 fee to expedite USCIS's second and final Decision. These circumstances therefore indicate it was not arbitrary nor capricious for USCIS to deny Mr. Kapoor a refund. Mr. Kapoor's request for a refund is denied.

CONCLUSION

Accordingly, for the stated reasons, IT IS HEREBY ORDERED that:

I.   Defendants' motion for summary judgment (ECF No. 40) is GRANTED;

II.  Plaintiff's motion for oral argument (ECF No. 43) is DENIED as moot;

III. The Clerk of Court shall enter judgment in Defendants' favor and close this case;

IV.  The Clerk of Court shall serve a copy of this Memorandum and
     Order on the parties in accordance with the Local Rules.


                                   SO ORDERED.


                                   /s/ JOANNA SEYBERT
                                   Joanna Seybert, U.S.D.J.

Dated: January 21, 2025
       Central Islip, New York